Haight, J.
So far as the demurrer to the indictment is concerned, no reason is shown why the same is not properly within the provisions of section 279 of the Code of Criminal Procedure, and, therefore, the demurrer was properly overruled by the trial court.
*639 Upon the trial it appeared that the defendant was engaged with one Silas W. Milliman in the grocery business, as dealers in foreign and domestic fruits, vegetables, oysters, etc., in the city of Rochester; that the business was conducted in the name of S. Milliman, and that the defendant Luke had a power of attorney from Milliman authorizing him to carry on and conduct the business in his name, to sign his name to all drafts, checks, bills of lading, letters, etc., and whatever else was necessary in the conduct of the business. It also appeared that in the city of Rochester there was a gentleman engaged in the same business by the name of Samuel Millman; that he was a man of wealth and reputation doing a large business throughout the country, and was rated in the Bradstreet Commercial agency as being worth $50,000 or upwards. It further appeared that on or about the 13th day of August, 1885, the defendant addressed a letter to Messrs Joseph B. Clement & Co., Philadelphia, Pa., having a printed heading of “S. Milliman, dealer in foreign and domestic fruits, vegetables and oysters, 224 North Clinton St., Rochester, N. T. Consignments solicited.” The letter was:
“ Gentlemen:—Please give me your prices for peaches, watermelons, nutmeg melons and sweet potatoes.
Tours, etc.,
S. MILLIMAN, per L.”
Subsequently an order for ten barrels of sweet potatoes was received by Clement & Co. from these parties which was filled and the price therefor paid. Subsequently and on September 1, 1885, a further order was received, signed S. Milliman, for fifty barrels of sweet potatoes, which order was also filled by shipment of the same to S. Milliman, Rochester; and subsequently further orders were made in the name of S. Milliman, and filled by Clement & Co., none of which were paid for. The evidence further tends to show that the defendant Luke wrote the letters, signed Milliman’s name and generally took charge of the business.
The theory of the prosecution appears to have been that the defendant made use of Milliman’s name for the purpose of deceiving dealers throughout the country, and for that purpose he dropped the given name “Silas W.,” using only the letter “S.,” so that the name might be easily taken for “Samuel” or “S. Millman.” That this was a scheme to induce dealers living at a distance to consign produce to him or S. Milliman on credit. That at the time of procuring the property mentioned in the indictment, both Luke and Milliman were insolvent and had no intention of paying for the same, and that it was procured with the intent to cheat and defraud Clement & Co. of the value *640 thereof; and for the purpose of establishing this fraudulent intent the district attorney introduced and there was received in evidence a large number of letters written to other dealers living at a distance throughout this and other states of the same import as those addressed to Clement & Co.
Undoubtedly evidence of other similar transactions at or about the same time is competent as bearing upon the question of the intent of the person charged with a criminal act. The letters written to these dealers and their replies thereto, when properly identified, and the fact as to whether the goods were procured, was doubtless competent upon this branch of the case, as bearing upon the question of intent, but we do not understand that letters written by dealers long after the transaction has taken place is competent evidence for any purpose. Upon the trial the district attorney produced a letter which was shown to the witness Spears, who had been at work for these parties in their store, and who testified that the letter was received by Milliman or Luke. The' letter was then offered in evidence; it was objected to as incompetent and immaterial, and as being nothing but written declarations of Clement after the transaction had been closed. The objection was overruled and exception taken. The letter was read and is as follows:
“Philadelphia, 10-3-85.
S. Milliman—On receipt of notice of your note going to protest I went to Rochester to see you. On first day there I was at your store several times, and was told you was out at present. I staid over another day, and was told you had left on the 1:05 train for New York. At the same time you was in Rochester and kept from me all the 'time. I have positive proof by three disinterested persons. Now, Mr. S. Milliman, I want my money, and there is no good reason why you should not pay me. The sweets shipped you no honest dealer could complain of. You have sold the sweet potatoes and got your pay. Now, I have not pressed you for the money until I got your protested note, then I came to Rochester to get my money and you have shunned me. Now, please let me hear from you and save further trouble. Hoping to hear from you soon.
J. B. CLEMENT & CO.”
This letter was not even identified as having been written and sent by Clement & Co. to the defendant or Milliman. It was produced by the district attorney, and Spears said it was received by Milliman or Luke. If it was a letter written by Clement & Co., as it purports to be, and forwarded to Milliman, it was long after the transaction charged in *641 the indictment, and consequently no part of the res gestae, it does not appear to us to be more than the declarations of Clement after the transaction, and such declarations are not evidence against a person charged with crime.
Again, the witness Spears testified that he believed Milliman did business with J. B. Bland, of Baltimore, in the fall of 1884. The witness was then shown a letter by the district attorney, and he answered that it was received from Mr. Bland. The letter was then read in evidence under the same objection and ruling as before stated, and reads in part as follows :
“Baltimore, October 9, 1884.
S. Milliman—Tour last letter reached me a few days ago. Yesterday I received a letter from your city which placed me in possession of all the facts, and shows me that I have been swindled, and you are the person who did it. Supposing you to be another party in your city who unfortunately has a name similar to yours I sent the barrels of potatoes, believing that I was dealing with an honest man. It turns out that I was mistaken, and the result of that mistake I see very plainly that I will lose that small sum; but, sir, if I lose it you shall not be the gainer. Mark well what I say. It will be the dearest twenty-eight dollars you ever made in your life,” etc. This letter contains upwards of two printed pages of matter, condemning in severe terms the parties to whom it was addressed. It was no part of the res gestae, and it was not competent to prove by it an order from the defendant in the name of Milliman for potatoes, or other produce, and that such order had been filled and not paid for. For these reasons a new trial must be ordered.
We have examined the case upon the merits, and in so far as the facts are concerned or the exercise of a discretion vested in this court, a new trial should be denied, but upon the errors of law, and those only, a new trial must be granted, and for that reason the proceedings are remitted to court of sessions of Monroe county.
Smith, P. J., and Bradley, J., concur.